# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

ABINGTON EMERSON CAPITAL, LLC,

        Plaintiff,

v.

        **Case No. 2:17-cv-143**
        **JUDGE GEORGE C. SMITH**
        **Magistrate Judge Jolson**

JASON ADKINS, *et al.*,

        Defendants.

## OPINION AND ORDER

This matter is before the Court upon several motions by various defendants to stay this action pending resolution of bankruptcy proceedings involving Defendant Jason Adkins and former Defendant Landash Corporation ("Motions to Stay") (Docs. 105, 125, 126, 128). The motions are fully briefed and ripe for disposition. For the following reasons, the Court **GRANTS** the Motions to Stay to the extent they rely on the Court's inherent authority; otherwise the Motions to Stay are **DENIED AS MOOT**.

## I.      BACKGROUND

Plaintiff Abington Emerson Capital, LLC's ("Abington") Second Amended Complaint ("SAC") asserts various causes of action arising out of a fraudulent scheme allegedly carried out by Defendants Jason Adkins ("Adkins"), XPO Global Forwarding, Inc. ("XPO")[1], Afif Baltagi ("Baltagi"), Mid America Tire of Hillsboro, Inc. ("Mid America"), Todd Wilkin ("Wilkin"), and John Eckerd ("Eckerd"). (Doc. 71, SAC). Abington describes the fraudulent scheme as follows.

---

[1] Abington's SAC names as a defendant XPO Logistics, Inc., but XPO states that its proper name is XPO Global Forwarding, Inc.

Adkins, with assistance from Eckerd, approached Abington seeking purchase order financing for a transaction between a ready and willing seller and buyer of off-the-road ("OTR") mining tires. Adkins and Eckerd represented to Abington that the seller was Wilkin and his company, Mid America, a tire distributor located in Clermont County, Ohio. Adkins and Eckerd represented to Abington that the buyer was Giant Tyre Service Pty. Ltd. d/b/a Giant Tyres ("Giant Tyres"), an earthmoving tire dealer located in Australia. Adkins and Eckerd represented that the purchase by Giant Tyres was already negotiated and ready to be executed. Adkins and Eckerd merely needed short-term financing to purchase the inventory from Mid America. (SAC ¶ 2.a).

Despite representations to the contrary, Mid America did not supply any tires for the transaction. Unbeknownst to Abington, Adkins already had possession and/or ownership of the tires, which were being stored at a warehousing facility in Houston, Texas that was owned, controlled, and/or maintained by XPO (the "XPO Houston warehouse"). (SAC ¶ 2.b).

Abington agreed to provide $1,523,000.00 in financing to purchase the tires, which was paid directly to Mid America. (SAC ¶ 2.c). Adkins fabricated a "work order" and "bill of sale," which were signed by Wilkin as president of Mid America, that showed the sale of the tires to Landash and Abington and the shipment of the tires to the XPO Houston warehouse. XPO, through its agent and manager of the XPO Houston warehouse, Baltagi, then fabricated a tire receipt and inspection report fraudulently stating that the tires were received at the XPO Houston warehouse. In fact, Mid America never owned the tires involved in the Abington transaction and never shipped the tires to the XPO Houston warehouse. (SAC ¶ 2.d).

Upon receipt of the work order and bill of sale, Abington disbursed the loan proceeds to Mid America. Two days later, Mid America, the purported seller of the tires, transferred

$1,165,000.00 into Adkins' personal bank account. Abington further asserts upon information and belief that Adkins then transferred a portion of the money he received from Mid America to XPO, Baltagi, Eckerd, and/or Eckerd controlled entities. (SAC ¶ 2.e). The fabricated transaction with Giant Tyres was never completed, and Adkins and Landash failed to repay the loan to Abington. (SAC ¶ 2.f).

Abington initially commenced an action against only Adkins and Landash Corporation ("Landash"), of which Adkins is president and CEO. (Docs. 1, Complaint, and 7, First Amended Complaint). After the case had been pending for nearly a year, Landash filed for Chapter 7 Bankruptcy. (Doc. 62, Notice of Filing under Bankruptcy Code and Suggestion of Stay). The Court stayed the action as to Landash until the Bankruptcy Court lifts the automatic stay under 11 U.S.C. § 362(a). (Doc. 65). Shortly thereafter, Abington was granted leave to file its Second Amended Complaint, which removed Landash as a defendant in recognition of the automatic stay, and added XPO, Baltagi, Mid America, Wilkin, and Eckerd as defendants. (Doc. 71, SAC). The SAC asserts claims against all defendants for fraud, federal and Ohio RICO violations, and civil conspiracy; claims against Adkins for breach of personal guaranty and unjust enrichment; and claims against XPO for breach of contract, conversion, and negligent bailment. (*Id.*).

Three days after Abington's Second Amended Complaint was filed, Adkins also filed for Chapter 7 Bankruptcy. (Doc. 78, Am. Notice of Bankruptcy Filing and of Automatic Stay). The Court stayed the action as to Adkins until the Bankruptcy Court lifts the automatic stay under 11 U.S.C. § 362(a). (Doc. 79). Subsequently, several of the defendants (XPO, Mid America, Wilkin, and Eckerd) have filed motions to stay the action in its entirety pending the resolution of Adkins's and Landash's bankruptcy proceedings. (Docs. 105, 125, 126, 128).

## II.    DISCUSSION

The defendants' arguments in favor of a stay take three basic forms: (1) the Court should exercise its inherent authority to stay the case on grounds of judicial economy (advanced by Eckerd and Wilkin); (2) the automatic stay under the Bankruptcy Code should be extended to the remaining co-defendants (advanced by all moving defendants); and (3) the action should be stayed pending resolution of a parallel criminal investigation (advanced by Wilkin).   As explained below, the Court will stay the case under its inherent authority; accordingly, the Court need not consider the defendants' other arguments in favor of a stay.

### A.    Standard of review

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court."  *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626 (6th Cir. 2014) (quoting *Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977));  *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).  In deciding whether to grant a stay, courts commonly consider factors such as: (1) the need for a stay; (2) the stage of litigation;  (3) whether  the  non-moving  party  will  be  unduly  prejudiced  or  tactically disadvantaged; (4) whether a stay will simplify the issues; and (5) whether burden of litigation will be reduced for both the parties and the court.  *Grice Eng'g, Inc. v. JG Innovs., Inc.*, 691 F. Supp. 2d 915, 920 (W.D. Wis. 2010) (citations omitted); *see also Ferrell v. Wyeth–Ayerst Labs., Inc.*, No. 1:01-cv-447, 2005 WL 2709623, at *1 (S.D. Ohio Oct. 21, 2005) ("There is no precise test in this Circuit for when a stay is appropriate.  However, district courts often consider the following factors: the need for a stay, the balance of potential hardship to the parties and the public, and the promotion of judicial economy.").  The movant bears the burden of showing both

a need for delay and that "neither the other party nor the public will suffer harm from entry of the order." *Ohio Envtl. Council*, 565 F.2d at 396.

## B.     Analysis

Wilkin and Eckerd[2] ask the Court to exercise its discretion to stay the action on grounds of judicial economy, as conducting the remaining discovery without the participation of Adkins or Landash will waste the parties' and the Court's resources and hamper Defendants' ability to defend against Abington's claims. Abington counters that despite the Court's inherent power to manage its own docket, the Sixth Circuit has cautioned that "a court must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay." *Ohio Envtl. Council*, 565 F.2d at 396.

The Court is mindful of Abington's concerns that staying the entire action until the Landash and Adkins bankruptcy stays are lifted will result in a delay of as-yet-unknown duration. However, if this case were to proceed, the Court anticipates significant difficulties for all parties.

For example, Adkins and Landash are not shielded from obligations to respond to discovery requests in furtherance of Abington's claims against the solvent co-defendants. *In re Privett*, 557 B.R. 580, 586 (S.D. Ohio 2016) (holding that the automatic stay under § 362 does not shield a debtor "from complying with discovery requests in a multi-defendant action where the debtor is a Defendant, but where the requests for discovery pertain to the claims against the other non-debtor Defendants."). But because Adkins and his co-defendants are all alleged to have participated in the same integrated fraudulent scheme, it seems inevitable that time-consuming disputes will arise as to which discovery requests pertain to Abington's claims

---

[2] XPO also argued in favor of a stay under the Court's inherent authority on reply (Doc. 140), but made only Bankruptcy Code arguments in its initial motion. (Doc. 105).

against Adkins or Landash, and which pertain to claims against the other defendants. Indeed, the Court has trouble envisioning significant discovery that could be undertaken without implicating Abington's claims against the debtors—which means that very little discovery could proceed even without a stay.

Further, even if the Court were able to identify a subset of discovery requests that pertain only to claims against the non-debtors, Adkins and Landash are key figures in Abington's theory of the case. It seems unlikely that any party could fully present their claims or defenses without their participation. And finally, even if the remaining parties were able to complete discovery and fully present their claims and defenses, proceeding in the absence of Adkins and Landash means that the Court would have to separately adjudicate Abington's claims against the debtors.

All of these logistical difficulties would be avoided by staying the present action until the automatic bankruptcy stays are lifted from Abington's claims against Adkins and Landash. And while Abington will be prejudiced by the delay, the Court finds that the prejudice is not undue. While it is unknown at this point exactly how long the stay will remain in effect, the Court finds that this uncertainty is outweighed by concerns for judicial economy. Further, although Abington raised concerns about document retention policies for bank and cell phone records that could result in destruction of documents subject to discovery, it has not provided any evidence that any specific documents are in imminent danger of destruction.

### III. CONCLUSION

For the foregoing reasons, Wilkin's and Eckerd's Motions to Stay (Docs. 125–126) are **GRANTED IN PART and DENIED AS MOOT IN PART**, and XPO's and Mid America's Motions to Stay (Docs. 105 and 128) are **DENIED AS MOOT**. This action is **STAYED** in its entirety until the Bankruptcy Court lifts the automatic stays applicable to Adkins and Landash under 11 U.S.C. § 362(a).

The Clerk shall remove Documents 105, 125, 126, and 128 from the Court's pending motions list.

**IT IS SO ORDERED.**

     */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**