UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ABINGTON EMERSON CAPITAL, LLC,

    Plaintiff,

    v.                                  Case No. 2:17-cv-143
                                        JUDGE GEORGE C. SMITH
                                        Magistrate Judge Jolson

JASON ADKINS, *et al.*,

    Defendants.

## OPINION AND ORDER

This matter is before the Court Plaintiff's Motion to Dissolve the Stay over the entirety of this action. (Doc. 148). Two defendants (XPO and Wilkin) have filed responses opposing the dissolution of the stay (Docs. 151 and 153) and Plaintiff replied. (Doc. 156). Defendant XPO also filed a Motion for Leave to File *(Instanter) Sur-Reply* (Doc. 153).[1] For the reasons that follow, Plaintiff's Motion to Dissolve the Stay is **GRANTED**.

### I.    BACKGROUND

Plaintiff Abington Emerson Capital, LLC's ("Abington") Second Amended Complaint asserts various causes of action arising out of a fraudulent scheme allegedly carried out by Defendants Jason Adkins ("Adkins"), XPO Global Forwarding, Inc. ("XPO")[2], Afif Baltagi ("Baltagi"), Mid America Tire of Hillsboro, Inc. ("Mid America"), Todd Wilkin ("Wilkin"), and

---

[1] Defendant XPO has submitted a *Sur-Reply* to address matters Plaintiff raised for the first time in its Reply. Accordingly, Defendant XPO's Motion for Leave to File *(Instanter) Sur-Reply* is **GRANTED**.
[2] Abington's Second Amended Complaint names as a defendant XPO Logistics, Inc., but XPO states that its proper name is XPO Global Forwarding, Inc.

John Eckerd ("Eckerd"). (Doc. 71, Second Amended Complaint). Abington describes the fraudulent scheme as follows.

Adkins, with assistance from Eckerd, approached Abington seeking purchase order financing for a transaction between a ready and willing seller and buyer of off-the-road ("OTR") mining tires. Adkins and Eckerd represented to Abington that the seller was Wilkin and his company, Mid America, a tire distributor located in Clermont County, Ohio. Adkins and Eckerd represented to Abington that the buyer was Giant Tyre Service Pty. Ltd. d/b/a Giant Tyres ("Giant Tyres"), an earthmoving tire dealer located in Australia. Adkins and Eckerd represented that the purchase by Giant Tyres was already negotiated and ready to be executed. Adkins and Eckerd merely needed short-term financing to purchase the inventory from Mid America. (Doc. 71, Second Amended Complaint ¶ 2.a).

Despite representations to the contrary, Mid America did not supply any tires for the transaction. Unbeknownst to Abington, Adkins already had possession and/or ownership of the tires, which were being stored at a warehousing facility in Houston, Texas that was owned, controlled, and/or maintained by XPO (the "XPO Houston warehouse"). (Doc. 71, Second Amended Complaint ¶ 2.b).

Abington agreed to provide $1,523,000.00 in financing to purchase the tires, which was paid directly to Mid America. (Doc. 71, Second Amended Complaint ¶ 2.c). Adkins fabricated a "work order" and "bill of sale," which were signed by Wilkin as president of Mid America, that showed the sale of the tires to Landash and Abington and the shipment of the tires to the XPO Houston warehouse. XPO, through its agent and manager of the XPO Houston warehouse, Baltagi, then fabricated a tire receipt and inspection report fraudulently stating that the tires were received at the XPO Houston warehouse. In fact, Mid America never owned the tires involved in

the Abington transaction and never shipped the tires to the XPO Houston warehouse. (Doc. 71, Second Amended Complaint ¶ 2.d).

Upon receipt of the work order and bill of sale, Abington disbursed the loan proceeds to Mid America. Two days later, Mid America, the purported seller of the tires, transferred $1,165,000.00 into Adkins' personal bank account. Abington further asserts upon information and belief that Adkins then transferred a portion of the money he received from Mid America to XPO, Baltagi, Eckerd, and/or Eckerd controlled entities. (Doc. 71, Second Amended Complaint ¶ 2.e). The fabricated transaction with Giant Tyres was never completed, and Adkins and Landash failed to repay the loan to Abington. (Doc. 71, Second Amended Complaint ¶ 2.f).

Abington initially commenced an action against only Adkins and Landash Corporation ("Landash"), of which Adkins is president and CEO. (Docs. 1, Complaint, and 7, First Amended Complaint). After the case had been pending for nearly a year, Landash filed for Chapter 7 Bankruptcy. (Doc. 62, Notice of Filing under Bankruptcy Code and Suggestion of Stay). The Court stayed the action as to Landash until the Bankruptcy Court lifts the automatic stay under 11 U.S.C. § 362(a). (Doc. 65). Shortly thereafter, Abington was granted leave to file its Second Amended Complaint, which removed Landash as a defendant in recognition of the automatic stay, and added XPO, Baltagi, Mid America, Wilkin, and Eckerd as defendants. (Doc. 71, Second Amended Complaint). The Second Amended Complaint asserts claims against all defendants for fraud, federal and Ohio RICO violations, and civil conspiracy; claims against Adkins for breach of personal guaranty and unjust enrichment; and claims against XPO for breach of contract, conversion, and negligent bailment. (*Id.*).

Three days after Abington's Second Amended Complaint was filed, Adkins also filed for Chapter 7 Bankruptcy. (Doc. 78, Am. Notice of Bankruptcy Filing and of Automatic Stay). The

Court stayed the action as to Adkins until the Bankruptcy Court lifts the automatic stay under 11 U.S.C. § 362(a). (Doc. 79). Subsequently, several of the defendants (XPO, Mid America, Wilkin, and Eckerd) filed motions to stay the action in its entirety pending the resolution of Adkins's and Landash's bankruptcy proceedings. (Docs. 105, 125, 126, 128). The Court granted the stay. (Doc. 144). Adkins' automatic bankruptcy stay has been lifted. (*See In re Adkins*, No. 2:18-bk-50671 (S.D. Ohio 2018)). Abington has now filed a motion to set aside the stay. (Doc. 148). Two of the defendants (XPO and Wilkin) filed responses opposing the stay being lifted. (Docs. 150 and 151).

## II. STANDARD OF REVIEW

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626 (6th Cir. 2014) (quoting *Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977)); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). In deciding whether to grant a stay, courts commonly consider factors such as: (1) the need for a stay; (2) the stage of litigation; (3) whether the non-moving party will be unduly prejudiced or tactically disadvantaged; (4) whether a stay will simplify the issues; and (5) whether the burden of litigation will be reduced for both the parties and the court. *Grice Eng'g, Inc. v. JG Innovs., Inc.*, 691 F. Supp. 2d 915, 920 (W.D. Wis. 2010) (citations omitted); *see also Ferrell v. Wyeth–Ayerst Labs., Inc.*, No. 1:01-cv-447, 2005 WL 2709623, at *1 (S.D. Ohio Oct. 21, 2005) ("There is no precise test in this Circuit for when a stay is appropriate. However, district courts often consider the following facts: the need for a stay, the balance of potential hardship to the parties and the public, and the promotion of judicial economy.").

## III. DISCUSSION

Plaintiff asserts that because Adkins' automatic bankruptcy stay has been lifted, it would be proper for this Court to set aside the stay over the entirety of this action. (Doc. 148, Mot. at 2). Defendants counter that the stay should remain in place largely because of Landash's and Eckerd's ongoing bankruptcy proceedings. (*See* Docs. 150, XPO's Rep. at 1; 151, Wilkin's Rep. at 5–7; 158, Ex. 1 XPO's Sur-Rep. at 4). The Court finds that the underlying reasons for staying this action are no longer compelling and that Defendants have not presented new reasons that demonstrate a need for the stay to remain in place.

Plaintiff emphasizes that if the Court allows this stay to remain in place, the potential for prejudice increases as the related cases in other courts are "proceeding full speed ahead." (*Id.* at 5; *see also Vecron Exim Ltd. v. XPO Logistics, Inc., et al.*, No. 4:18-cv-2394 (S.D. Tex. 2018); *Southern Start Capital, LLC v. XPO Global Logistics, Inc., et al.*, No. DC-18-07847, (Dallas Cty. Dist. Ct. 2018); *Tujague v. Eckerd, et al.*, No. 4:18-cv-408, (E.D. Tex. 2018)[3]). Defendants disagree, arguing that the stay should remain in place. (*See* Docs. 150, XPO Rep. at 1; 151, Wilkin Rep. at 5–9). Plaintiff rebuts such assertion, insisting that the stay should be dissolved for three reasons: 1) Landash will never emerge from bankruptcy proceedings, as the company will be liquidated as a result of the proceedings and cease to exist; 2) Landash was a mere shell of Adkins; and 3) because Landash is not a named party in the current case, the status of its bankruptcy proceedings is immaterial. (Doc. 156, Rep. at 2–3).

---

[3] Given Defendant Eckerd's petition of bankruptcy, this case has been stayed as to Eckerd. *See Tujague v. Eckerd, et al.*, No. 4:18-cv-408, Doc. 64, July 27, 2018 (E.D. Tex. 2018). However, it does not appear that the case has been stayed in its entirety. *See generally Tujague v. Eckerd, et al.*, No. 4:18-cv-408 (E.D. Tex. 2018). Defendants XPO and Wilkin assert that Plaintiff's concerns as to this action are alleviated due to the stay over Eckerd. (Docs. 150, XPO Rep. at 4; 151, Wilkin's Rep. at 3).

Defendant XPO states that the stay should remain for two reasons; 1) Landash is still in bankruptcy proceedings; and 2) Eckerd has now also filed a bankruptcy petition. (Doc. 150, XPO Rep. at 1). Defendant Wilkin also requests that the stay remain for two reasons: 1) to avoid prejudice and promote judicial economy; and 2) preservation of his Fifth Amendment right against self-incrimination. (*See* Doc. 151, Wilkin Rep. at 5–9). The Court finds that none of these reasons, either standing alone or taken collectively, establish a sufficiently compelling reason for this stay to remain and that the potential prejudice to Plaintiff outweighs the Defendants' need for the stay.

Defendant XPO correctly points out that the Court ordered that the action be stayed until the Bankruptcy Court lifts the automatic stays applicable to Adkins and Landash. (*See Abington Emerson Capital, LLC v. Adkins, et al.*, No. 2:17-cv-143, Doc. 144, June 1, 2018). However, weighing the circumstances as they are now, Defendants can no longer show a compelling reason for this stay to continue. First, Wilkin's Fifth Amendment concerns are attenuated as Wilkin has, as of yet, not been formally charged. *E.M.A. Nationwide*, 767 F.3d at 629 ("Because there was no indictment, however, the Fifth Amendment concerns expressed by Defendants are not very compelling."). Second, Adkins' automatic bankruptcy stay has been lifted. (*See In re Adkins*, No. 2:18-bk-50671 (S.D. Ohio 2018)). Third, Eckerd's automatic bankruptcy stay is not a compelling reason to keep the stay in place as the record does not reflect that Eckerd's role in this scheme was as central as Adkins. (*See* Doc. 71, Second Amended Complaint ¶¶ 15–70). And fourth, Landash's automatic bankruptcy stay is not so compelling as to outweigh the prejudice Abington suffers by having this action remain stayed—especially given that Landash is not a named party in this action.

The Court imposed this stay on June 1, 2018; thus, Plaintiff has been stuck in limbo on this matter for over four months. During these past four months, proceedings have been ongoing in other courts for actions allegedly perpetuated by these same or similar defendants for similar

6

fraudulent schemes. *See Vecron Exim Ltd. v. XPO Logistics, Inc., et al.*, No. 4:18-cv-2394 (S.D. Tex. 2018); *Southern Start Capital, LLC v. XPO Global Logistics, Inc., et al.*, No. DC-18-07847 (Dallas Cty. Dist. Ct. 2018). Furthermore, it becomes less likely that this Plaintiff will ever be able to recover the longer this action remains stayed while other related proceedings advance. *See Karimona Invs., LLC v. Weinreb*, No. 02-cv-1792, 2003 WL 941404, at *3 (S.D.N.Y. Mar. 7, 2003) (denying defendant's motion to stay, finding that: "Plaintiff has legitimate concerns that further delay may prejudice its ability to recover against" the defendant given defendant is a party in another case that arose out of similar allegations as the case at bar.). Moreover, the longer this stay is in place, the likelihood that documents vital to Plaintiff's case are destroyed rises. Every day this action remains stayed, the prejudice to the Plaintiff increases.

Furthermore, for the reasons discussed above, a continued stay will neither simplify this case's issues nor will it reduce the burden of litigation for both the parties and the Court. The Court acknowledges Defendant Eckerd's ongoing criminal case.[4] (*See United States v. Eckerd*, 2:18-mj-3556 (D. N.J. 2018)). But " 'there is no requirement that a civil proceeding be stayed pending the outcome of criminal proceedings.' " *E.M.A. Nationwide*, 767 F.3d at 627 (quoting *S.E.C. v. Novaferon Labs, Inc.*, No. 91-3102, 941 F.2d 1210, 1991 WL 158757, at *2 (6th Cir. Aug. 14, 1991)). At this time, the ongoing criminal case does not outweigh the prejudice Plaintiff is now suffering, and will continue to suffer, if the Court allowed this stay to remain in place. Thus, the Court, based on its inherent authority to control its own docket, now finds that

---

[4] The Court need not balance all six factors laid out in *E.M.A. Nationwide* that a court typically undertakes when a defendant has been indicted as, at this time, Defendant Eckerd is the only defendant to have been indicted and—because of his bankruptcy proceeding—the case is stayed as to him. *See E.M.A. Nationwide*, 767 F.3d at 627 (listing the six factors); *United States v. Eckerd*, 2:18-mj-3556 (D. N.J. 2018); *see also* Doc. 149, Suggestion of Bankr.

Defendants' reasons for staying this action in its entirety are no longer sufficiently compelling and the stay is hereby lifted.

## IV. CONCLUSION

Based on the foregoing, Defendant XPO's Motion to for Leave to File *(Instanter) Sur-Reply* and Plaintiff's Motion to Dissolve the Stay are **GRANTED**. The parties shall contact Magistrate Judge Jolson's chambers to establish a case management schedule. The Clerk shall remove Documents 148, 150, 151, 156, and 158 from the Court's pending motions list.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　*/s/ George C. Smith*
　　　　　　　　　　　　　　　　　　　　　**GEORGE C. SMITH, JUDGE**
　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT COURT**