# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**ABINGTON EMERSON CAPITAL, LLC,**

       **Plaintiff,**

    v.

**LANDASH CORPORATION, et al.,**

       **Defendants.**

Civil Action 2:17-cv-143
Judge Sarah D. Morrison
Magistrate Judge Jolson

## OPINION AND ORDER

This matter is before the Court on Defendants XPO Logistics, Inc.'s and XPO Global Forwarding, Inc.'s (collectively, "XPO") Motion for a Rule 502(D) Order. (Doc. 232). The Motion is **GRANTED in part and DENIED in part**.

### I. BACKGROUND

In February 2019, Defendant XPO requested that the parties agree to a Rule 502(d) order. (Doc. 221 at 8). Over the past several months, the parties "have met and conferred extensively about the potential entry of" such an order but have been unable to agree on all terms. (*Id.*). On June 27, 2019, the Court held a status conference with the parties to discuss the status of, among other things, this dispute. (Doc. 230 at 1). The Court directed the parties "to continue to meet and confer concerning agreed language for a 502(d) Claw Back Order." (*Id.* at 2). The conferral process was unsuccessful, Defendant XPO filed the instant Motion on July 8, 2019, and briefing on the Motion is now complete.

### II. DISCUSSION

Through the conferral process, the parties agreed to the entry of at least some form of a

Rule 502(d) order. (*See* Doc. 243 at 12 (email from counsel for Plaintiff to Defendant XPO's counsel, stating "[a]s a compromise, we are willing to agree to the terms set forth in the attached Model 502(d) Order.")). Although Plaintiff now hints that it opposes any iteration of a clawback agreement (Doc. 243 at 16 ("XPO's Motion should be denied in its entirety" because "XPO does not even attempt to show good cause" to support entering a Rule 502 order)), the parties' communications show that the true dispute is about what terms should be included in such an agreement. Specifically, three key sticking points remain: (1) whether the Rule 502(d) order should have retroactive application; (2) whether the Rule 502(d) order should apply to documents that were inadvertently, rather than intentionally, produced; and (3) whether the Rule 502(d) order should contain a deadline for identifying privileged documents to be clawed back. The Court addresses each of these issues in turn.

Rule 502 applies "to disclosure of a communication or information covered by the attorney-client privilege or work-product protection." Fed. R. Evid. 502. The Rule states, in relevant part, that:

> **(a) Disclosure Made in a Federal Proceeding or to a Federal Office or Agency; Scope of a Waiver.** When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:
>
>> **(1)** the waiver is intentional;
>>
>> **(2)** the disclosed and undisclosed communications or information concern the same subject matter; and
>>
>> **(3)** they ought in fairness to be considered together.
>
> **(b) Inadvertent Disclosure.** When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:
>
>> **(1)** the disclosure is inadvertent;

> **(2)** the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> **(3)** the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).
>
> . . .
>
> **(d) Controlling Effect of a Court Order.** A federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court--in which event the disclosure is also not a waiver in any other federal or state proceeding.
>
> **(e) Controlling Effect of a Party Agreement.** An agreement on the effect of disclosure in a federal proceeding is binding only on the parties to the agreement, unless it is incorporated into a court order.

Fed. R. Evid. 502.

> The enactment of Rule 502 had two primary purposes:
>
> (1) to resolve longstanding disputes in the courts about the effect of certain disclosures of communications or information protected by the attorney-client privilege, and (2) to respond to the widespread complaint that litigation costs necessary to protect against waiver had become prohibitive due to the concern that any disclosure (however innocent or minimal) would operate as a subject-matter waiver of all protected communications or information.

*Irth Sols., LLC v. Windstream Commc'ns LLC*, No. 2:16-CV-219, 2017 WL 3276021, at *6 (S.D. Ohio Aug. 2, 2017), *objections overruled*, No. 2:16-CV-219, 2018 WL 575911 (S.D. Ohio Jan. 26, 2018) (citing Fed. R. Evid. 502 advisory committee's explanatory note).

"Rule 502 was designed 'to provide a predictable, uniform set of standards under which parties can determine the consequences of a disclosure of a communication or information covered by the attorney-client privilege or work product protection.'" *Irth Sols.*, 2017 WL 3276021, at *6 (quoting Fed. R. Evid. 502 advisory committee's explanatory note). Those standards provide basic protections limiting the consequences of inadvertent disclosure of privileged information. Parties are free to contract for additional protections beyond those provided in the Rule. But where the

3

parties cannot agree on additional protections beyond those provided in the Rule, the Court is reluctant to impose them absent exceptional circumstances. And, rather than asking the Court to provide additional protections to address some hypothetical disagreement in the future, the better practice is for parties to establish a procedure for resolving potential disputes as they arise.

With this guidance in mind, the Court finds that the entry of a Rule 502(d) order, consistent with the discussion below, is appropriate in this case. First, Defendant XPO seeks to include a provision that would make the terms of the proposed order "apply to all documents or data produced in this litigation, irrespective of whether such production pre-dates this Order." (Doc. 232-1, ¶ 7). While Plaintiff maintains that this retroactive provision is inappropriate, Defendant XPO insists that it is essential, because, without it, the order "giv[es] no protection to documents previously produced in this case, or arguably previously produced in other cases but which may also be produced in this case," (Doc. 232 at 6).

Defendant XPO cites two out-of-circuit cases in which retroactive 502(d) orders were approved. (*See* Doc. 245 at 4 (citing *Schaffer Family Inv'rs, Ltd. Liab. Co. v. Sonnier*, No. CV 13-5814-SVW (JEMx), 2014 WL 1325672 (C.D. Cal. Apr. 2, 2014); *Labyrinth Optical Techs. LLC v. Ciena Communs., Inc.*, No. 8:12-cv-02217-AG-DFM, Doc. 57 (C.D. Cal. Dec. 18, 2013)). But those orders do not help Defendant XPO here because the parties in those other cases stipulated to retroactive protections. *See Schaffer Family Inv'rs*, 2014 WL 1325672, at *1 ("Pursuant to the Stipulation Governing Use and Dissemination of Confidential Information filed by Plaintiffs Schaffer Family Investors, LLC and Robert Schaffer and Defendants Lee Sonnier, Kris Melancon, Pinnacle Oil & Gas, LLC, and Lemel Petroleum, LLC …"; *Labyrinth Optical Techs.*, Doc. 57 at 2 ("[T]he parties hereby stipulate to and petition the court to enter the following Stipulated Protective Order."). If the parties had stipulated to entry of XPO's proposed order here, the Court

most likely would have entered it. But they have not done so, and Defendant XPO has not persuaded the Court that an order containing the provision in paragraph seven of Defendant XPO's proposed order is necessary for documents produced prior to February 2019 when the parties began negotiating regarding the Rule 502 order.

It is unclear to the Court, however, whether the parties have, in fact, produced any documents since February 2019 when negotiations began regarding the Rule 502 order. The parties are, therefore, directed to promptly notify the Court whether any such productions have been made. In a separate order, the Court will address whether the protections offered by its Rule 502(d) order will extend to any documents produced during that time period.

Second, Defendant XPO seeks to avoid the use of the word "inadvertent." To that end, its proposed order provides that privilege is not waived when a party "discloses information in connection with the pending litigation without intending to waive the attorney-client privilege or work-product protection." (Doc. 232-1, ¶ 1). Defendant XPO defends its request by contending that "it is widely known that the inclusion of the word 'inadvertent' in Rule 502(d) orders give rise to additional disputes between the parties later on." (Doc. 245 at 4). But "inadvertent" is the explicit language of Rule 502(b), and departing from it here is not justified. Thus, in its discretion, the Court will enter a Rule 502(d) order that provides:

> Pursuant to Fed. R. Evid. 502, the inadvertent production of documents and data pursuant to this Order shall not result in the waiver of the attorney-client privilege or work-production protection as to those documents and data. Also, the inadvertent production of privileged or protected documents or data under this Order shall not result in the waiver of the attorney-client privilege or work-product protection as to those documents and data in any other Federal or State proceeding. Any privileged material inadvertently so disclosed shall be and remain the property of the producing party.

Third, Plaintiff seeks to add a provision imposing a deadline for identifying and clawing back privileged documents that were inadvertently produced during discovery. As demonstrated

by the Court's frequent intervention in this matter, it is willing to help the parties resolve intractable discovery disputes. But the issue of whether Plaintiff's proposed deadline is appropriate is not such a dispute. The parties are represented by experienced, skilled counsel. The Court trusts that counsel can establish a procedure to address the parties' concerns with respect to this issue without further Court intervention. The parties are directed to meet and confer accordingly.

Given the significant quantity of ESI subject to discovery in this case, and the Court's and the parties' interest in an efficient discovery process, the Court finds that entry of a Rule 502(d) order is appropriate here consistent with the discussion above.

### III. CONCLUSION

For the foregoing reasons, Defendant XPO's Motion for a Rule 502(D) Order (Doc. 232) is **GRANTED in part and DENIED in part**. On or before August 16, 2019, Defendant XPO is **ORDERED** to submit a Rule 502(d) order consistent with the terms of this Opinion and Order to the Undersigned's chambers at jolson_chambers@ohsd.uscourts.gov.

IT IS SO ORDERED.


Date: August 2, 2019 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE