# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**ABINGTON EMERSON CAPITAL, LLC,**

      Plaintiff,

      v.

**LANDASH CORPORATION, et al.,**

      Defendants.

Civil Action 2:17-cv-143
Judge Sarah D. Morrison
Magistrate Judge Jolson

## OPINION AND ORDER

This matter is before the Court on Defendants XPO Logistics, Inc.'s and XPO Global Forwarding, Inc.'s (collectively, "XPO") Motion for a Protective Order. (Doc. 241). For the reasons that follow, the Motion is **GRANTED in part** and **DENIED in part**.

## I.  BACKGROUND

The Court, elsewhere, has provided a detailed review of the allegations in this case. (*See, e.g.*, Docs. 144, 159). Discovery in this matter is ongoing—a process which has required frequent Court intervention. Currently, the parties dispute whether Plaintiff Abington Emerson Capital, LLC ("Abington") may depose XPO's former in-house counsel, Susan Santo. The parties filed a joint status report on June 21, 2019, discussing this issue, among others. (Doc. 221 at 2–7). Abington believes that it is entitled to depose Ms. Santo because she has relevant, nonprivileged information about the facts of this case. (*Id*. at 2–6). In the joint status report, Abington emphasized, and the Court paid particular attention to, the fact that XPO produced 221 pages of "highly relevant emails obtained directly from Ms. Santo's XPO email account." (*Id*. at 3). XPO, on the other hand, believes that "any information [Ms. Santo] would have would be subject to the

attorney-client privilege and/or attorney work product protection." (*Id*. at 6).

The Court held a status conference with the parties on June 27, 2019, and set an expedited briefing schedule for XPO's Motion for a Protective Order. (Doc. 230 at 1–2). The matter is now ripe for resolution. (*See* Docs. 241, 248, 253).

## II. STANDARD

To start, lawyers are not immune from deposition. *See Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). While a party may move, under Rule 26(c)(1) for a protective order limiting or preventing a lawyer's deposition, it is rare for a court to prohibit a deposition in its entirety:

> In general, motions for protective orders seeking to prevent the taking of a deposition [are] regarded unfavorably by the courts. Such orders should be rarely granted absent extraordinary circumstances, therefore the moving party bears a heavy burden.

*Ogle v. Columbia Gas Transmission, LLC*, No. 2:10-CV-1059, 2014 WL 6814145, at *6 (S.D. Ohio Dec. 3, 2014) (quotation marks and citation omitted).

That being said, the practice of deposing opposing counsel has the potential to disrupt litigation, undermine the attorney-client relationship, and lead to the improper disclosure of the attorney's litigation strategy. *See Shelton*, 805 F.2d at 1327; *see also Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 730 (8th Cir. 2002) (describing *Shelton* rationale). Therefore, the court may, in some circumstances, shift the burden to the party seeking to depose counsel and require it to show three things: (1) no other means exist to obtain the information; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002) (citing *Shelton*, 805 F.2d at 1327 (the "*Shelton* test")).

Relevant here, courts do not automatically apply the *Shelton* test each time a party seeks to

depose a lawyer. To the contrary, "the Federal Rules of Civil Procedure create no special presumptions or exceptions for lawyers, or anyone else[.]" *United States v. Philip Morris Inc.*, 209 F.R.D. 13, 19 (D.D.C. 2002) This is because "the Federal Rules presume openness in discovery[.]" *Id*. To allow otherwise, "the presumption of discoverability in the Federal Rules would be turned upside down," and it would allow a party "to immunize themselves from discovery on key issues, by knowingly and strategically placing persons who happen to be attorneys in positions where they perform critical [functions]." *Id*.

So, when a party seeks to depose a lawyer who is not serving as opposing counsel or who is not currently involved in the litigation, the court may decline to apply *Shelton*. This makes sense when considering two important purposes of the *Shelton* test: preventing the disruption of the adversarial system through harassment of opposing counsel and reducing the burden and cost of litigation arising from collateral issues of privilege and attorney work product. *See Shelton*, 805 F.2d at 1327. These concerns are not necessarily present in a case, like this one, where the lawyer to be deposed is not opposing counsel. *See, e.g.*, *Ogle*, 2014 WL 6814145, at \*6 (noting that the "fact alone" that plaintiff sought to depose former in-house counsel was "not determinative of *Shelton*'s applicability"); *Devlyne v. Lassen Mun. Util. Dist.*, No. CIV. S-10-0286 MCE, 2011 WL 4905672, at \*2 (E.D. Cal. Oct. 14, 2011) ("Simply being a former general counsel for a party is insufficient to bring one under the protection of the *Shelton* rule"); *Porter v. White*, No. 8:04-CV-367-T-17MSS, 2005 WL 8160135, at \*2–3 (M.D. Fla. Nov. 14, 2005) (finding that the rationale of *Shelton* did not apply to former counsel because he was not involved in the current litigation); *Hilton Hotels Corp. v. Dunnet*, No. 00-2852-GV, 2001 WL 1910057, at \*3 (W.D. Tenn. Sept. 5, 2001) (noting that, "[a]s former in house-counsel, the rationale behind the *Shelton* burden-shifting approach is not necessarily applicable."); *but see S. Film Extruders, Inc. v. Coca-Cola Co.*, 117

3

F.R.D. 559, 561 (M.D.N.C. 1987) (finding *Shelton* applied to deposition of party's former attorney).

If a court concludes that *Shelton* does not apply, it simply applies Rule 26(c)(1) of the Federal Rules of Civil Procedure, governing protective orders. Under that Rule, the movant must show good cause, and the court may enter a protective order if the discovery would result in annoyance, embarrassment, oppression, or undue burden. Fed. R. Civ. P. 26(c)(1). *See, e.g.*, *Ogle*, 2014 WL 6814145 (finding that "there was no basis for applying *Shelton*" to deposition of former in-house counsel, and therefore "the question then becomes whether the defendants have advanced other persuasive reasons in support of their position that [counsel] should not be deposed.").

## III. DISCUSSION

Because Abington seeks to depose XPO's former in-house counsel, the Court must answer two questions: (1) whether the heightened standard from *Shelton* applies; and (2) if so, whether *Shelton* prevents Ms. Santo's deposition altogether.

### A. Applicability of *Shelton*

Because Ms. Santo is no longer counsel for XPO, the question of whether to apply *Shelton* is not straightforward. XPO asserts that *Shelton* applies because Ms. Santo played a "key role" in developing its litigation strategy in this case. (Doc. 241 at 7). Abington responds that because Ms. Santo "is not (and has never been) trial or litigation counsel for XPO, and, in fact, is no longer employed by XPO," *Shelton* has no bearing here. (Doc. 248 at 1).

As noted, the *Shelton* test seeks, in part, to prevent the disruption of litigation through harassment of opposing counsel and seeks to allow "[c]ounsel [] [to] be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent." *Shelton*, 805 F.2d at 1327. But Ms. Santo is not opposing counsel in this case, and

therefore, these concerns are not readily apparent. As one district court in this Circuit has observed:

> Here, Huber is not opposing trial counsel of record for Promus and has not entered an appearance of record as counsel in this case, but instead he is a former in-house counsel for Promus. As former in-house counsel, the rationale behind the *Shelton* burden-shifting approach is not necessarily applicable. A deposition of the former general counsel would not disrupt the adversarial system nor detract opposing counsel from their business of preparing for trial.

*Dunnet*, 2001 WL 190057, at *3 (permitting the limited deposition of former in-house counsel).

The same is true here. Because Ms. Santo is not involved in the current litigation, the Court need not be concerned that her deposition would interfere with her ability to focus on this litigation. Nor is there any evidence that Abington is seeking to depose Ms. Santo "solely for purposes of harassment." *Ogle*, 2014 WL 6814145, at *6 (allowing the deposition of former in-house counsel to proceed); *see also Porter*, 2005 WL 8160135, at *2–3 (finding that the rationale of *Shelton* did not apply to party's former counsel). Accordingly, the Court is not persuaded that *Shelton* applies here.[1]

## B. *Shelton* Criteria

Nevertheless, even if the Court were to apply *Shelton*, the Court finds that Abington has met its burden in showing (1) that no other means exist to obtain the information; (2) that the information sought is relevant and nonprivileged; and (3) that the information is crucial to the preparation of its case. *See Nationwide Mut. Ins. Co.*, 278 F.3d at 628 (citing *Shelton*, 805 F.2d at 1327).

Turning to the second and third *Shelton* elements first—that the information is

---

[1] Notably, XPO, relying on the applicability of *Shelton*, advances no other reasons, i.e., undue harm, burden, or expense, why Ms. Santo should not be deposed, and the Court does not find that these concerns justify preventing Ms. Santo's deposition altogether.

relevant/nonprivileged and that it is crucial—the Court keeps circling back to the same indisputable fact: XPO, in response to Abington's subpoena, produced 221 pages of emails obtained from Ms. Santo's email account as potentially relevant and nonprivileged discovery. (*See* Doc. 241-3). XPO trivializes the significance of these emails, stating that they "include attachments to emails consisting of correspondence and third parties related to the tires and publicly-filed pleadings sent to Ms. Santo." (Doc. 241 at 5). But XPO does not explain—and the Court cannot ascertain—why this makes them any less relevant. Indeed, according to Abington, these emails and attachments only further underscore Ms. Santo's "direct firsthand knowledge" of the events leading up to this litigation, and "the OTR tire Ponzi scheme generally." (Doc. 248 at 16–17). And, what is more, Abington believes that these emails show that Ms. Santo "knowingly provided Abington with false information related to Adkins' delinquency to protect potential claims XPO may have had related to Adkins' nonpayment." (Doc. 248 at 7). This, according to Abington, is essential to proving the elements of its RICO claim, including the existence of an association-in-fact enterprise and proof of a pattern of racketeering. (*Id*. at 14–15, 19–20). XPO maintains that storage fees have "nothing to do with the case," (Doc. 253 at 5; *see also id*. at 14), but Abington insists that these emails regarding the storage fees show that "Ms. Santo was providing the false information to cover up XPO's collection efforts" and that "[i]t will be impossible to determine whether XPO engaged in a cover up without [her] deposition," (Doc. 248 at 7–8).

Consequently, and upon review of Ms. Santo's emails produced by XPO, it is difficult for the Court to conclude that Ms. Santo has no "personal knowledge of the alleged fraud." (Doc. 241 at 5). To the contrary, the Court finds that she "is alleged to be a percipient witness to facts relevant" to Abington's claims—"facts which are outside the litigation proceedings." *See Devlyne*,

2011 WL 4905672, at *2 (permitting deposition of former in-house counsel to proceed); *see also Light Salt Inv. LP v. Fisher*, No. 13CV1158-MMA DHB, 2013 WL 3205918, at *2–4 (S.D. Cal. June 24, 2013) (permitting plaintiff to depose in-house counsel, noting that she "had a substantial degree of participation in the underlying events as they unfolded"). Accordingly, Abington has satisfied the second and third *Shelton* elements. *See, e.g.*, *Fugett v. Sec. Transp. Servs., Inc.*, No. 14-2291-JAR, 2015 WL 419716, at *3 (D. Kan. Feb. 2, 2015) (finding that party would "seek information pertaining to the events giving rise to her cause of action rather than legal advice [former counsel] provided . . . or related to [his] role as [] counsel in this action"); *Ohio Ass'n of Elementary Sch. Adm'rs v. Educ. Impact, Inc.*, No. 2:11-CV-68, 2012 WL 3731487, at *1–3 (S.D. Ohio Aug. 28, 2012) (allowing defendant to depose counsel about information that was "arguably relevant" to its counterclaims).

Finally, the Court concludes that Ms. Santo is the only source of the information sought by Abington. XPO maintains that Abington may acquire the information regarding the emails from current and former XPO employees. (Doc. 241 at 10–11). But the problem for XPO is that Abington seeks information that only the author of these emails can know. For example, Abington seeks to know "why Ms. Santo sent Abington false information about the storage fees for the Tires." (Doc. 248 at 18). XPO asserts that Ms. Santo cannot explain why she wrote these emails without disclosing her privileged mental impressions. (Doc. 253 at 10). But it is not immediately clear to the Court—nor does XPO sufficiently explain—that questioning Ms. Santo about her factual basis for sending nonprivileged emails to third parties would necessarily reveal privileged mental impressions. (*See* Doc. 248 at 4–9). The Court agrees with Abington that while others may have information related to these emails, only Ms. Santo can explain her factual basis for writing them. As such, Abington has satisfied all three *Shelton* elements, and the Court will allow

Ms. Santo's deposition to proceed.

At the same time, however, the Court is mindful of XPO's concerns regarding the potential disclosure of privileged information. XPO submitted an affidavit from its outside counsel, explaining that Ms. Santo "is intimately familiar with XPO's litigation strategy in this and the other Adkins-related lawsuits," that she "supervised the development of this litigation," and "represented XPO in this dispute from its infancy." (Doc. 241-1; *see also* Doc. 253 at 2–3 (explaining Ms. Santo's role as "supervising in-house litigation counsel")). Based on these representations, the Court finds that some protection is justified.

Given the Court's "broad discretion" to "determin[e] the proper scope of discovery," *Gruenbaum v. Werner Enter., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010), the Court finds that the best course of action is to limit the scope of Ms. Santo's deposition. This remedy allows discovery to proceed but also protects against the disclosure of potentially privileged information. *See, e.g.*, *Appalachian Reg'l Healthcare, Inc. v. U.S. Nursing Corp.*, No. 714CV00122ARTEBA, 2017 WL 9690397, at *6 (E.D. Ky. Apr. 27, 2017) (allowing deposition of counsel to proceed but limiting its scope to specific topics); *Ogle*, 2014 WL 6814145, at *9 (same); *Hamilton Cty. Emergency Commc'ns Dist. v. Bellsouth Telecomm, LLC*, No. 1:11-CV-330-CLC-SKL, 2013 WL 11327675, at *3 (E.D. Tenn. Dec. 30, 2013) (allowing limited deposition of opposing counsel to go forward); *Light Salt Inv.*, 2013 WL 3205918, at *2–4 (same); *Ohio Ass'n of Elementary Sch. Adm'rs*, 2012 WL 3731487, at *2 (same); *Chesemore v. All. Holdings, Inc.*, No. 1:11 MC 43, 2011 WL 4458782, at *1 (N.D. Ohio Sept. 23, 2011) (same).

Nothing in this Opinion either suggests that Ms. Santo may be questioned without proper regard for the attorney-client or work product privileges or that counsel for XPO may not properly invoke them if a question calls for the disclosure of privileged information. This Opinion merely

permits Abington to convene Ms. Santo's deposition on specific nonprivileged topics.

## IV. CONCLUSION

For the foregoing reasons, Defendant XPO's Motion for a Protective Order (Doc. 241) is **GRANTED in part** and **DENIED in part**. The parties are **DIRECTED** to meet and confer and submit agreed-upon topics for questioning to the Court no later than August 23, 2019. If the parties are unable to agree upon such topics, the Court, in its discretion, will select topics for questioning for the parties.

IT IS SO ORDERED.


Date: August 12, 2019  /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE