**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


**ABINGTON EMERSON CAPITAL, LLC,**

       **Plaintiff,**

                                   **Civil Action 2:17-cv-143**
  **v.**                                  **Judge Sarah D. Morrison**
                                     **Magistrate Judge Jolson**

**LANDASH CORPORATION, et al.,**
       **Defendants.**


## OPINION AND ORDER

This matter is before the Court on Defendant XPO Global Forwarding, Inc.'s and Defendant XPO Logistics, Inc.'s (collectively, "XPO") Motion to Permanently Seal (Doc. 379). For the following reasons, XPO's Motion is **GRANTED**, and the Clerk is **DIRECTED** to permanently seal Document 378, as well as the attached exhibits, Documents 378-1 and 378-2.

### I.      BACKGROUND

On August 7, 2020, the Court granted Plaintiff Abington Emerson Capital, LLC's ("Abington") Motion for Leave to File its Reply in Support of Motion in *Limine* No. 1 Temporarily under Seal.  (Doc. 377).  The Court temporarily sealed the documents and directed the parties to file any motion to permanently seal within fourteen days.  (*Id*.).  XPO timely moved to permanently seal on the basis of the common interest doctrine.  (Docs. 379).  XPO's Motion is unopposed.  (*See id*. at 1 n.2).  Thus, this matter is ripe for resolution.


### II.      STANDARD

A district court may enter a protective order during discovery on a mere showing of "good cause." Fed. R. Civ. P. 26(c)(1).  "[V]ery different considerations apply" when a party seeks to seal documents "[a]t the adjudication stage," which applies "when the parties place material in the court record." *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) (quotation omitted).  "Unlike information merely exchanged between the parties, '[t]he public has a strong interest in obtaining the information contained in the court record.'" *Id.* (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983)).  For this reason, the moving party bears a "heavy" burden of overcoming a "'strong presumption in favor of openness' as to court records." *Shane Grp., Inc.*, 825 F.3d at 305 (quoting *Brown & Williamson*, 710 F.2d at 1179).  "[T]he seal itself must be narrowly tailored to serve that reason," which requires the moving party to "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Shane Grp., Inc.*, 825 F.3d at 305–06 (quotation marks and citation omitted).  Similarly, the court "that chooses to seal court records must set forth specific findings and conclusions which justify nondisclosure." *Id.* at 306 (quotation marks and citation omitted).

## III.    DISCUSSION

As noted, XPO seeks to permanently seal documents that Abington cites in its reply brief in support of its first Motion in *Limine*.  (*See generally* Doc. 379).  XPO contends that these documents, consisting of counsel's email communications and references to the same, are protected under the common interest doctrine.  (*See generally id.*).  By way of background, "[i]n 2017, on the precipice of this litigation, XPO's in house and outside counsel communicated with Timothy Parlatore, former counsel for Defendant Jason Adkins." (*Id.* at 1).  As Abington had sued both XPO and Adkins, the two had a common interest at that time in defending against the

litigation. (*Id.*). So XPO "initially withheld email communications" between its counsel and counsel for Defendant Adkins as privileged under the common interest doctrine. (*Id.* at 2). Abington subsequently moved to compel these documents, and, thereafter, numerous discovery disputes unfolded. (*Id.* (citing Doc. 300)). The Court encouraged the parties to work together to resolve these disputes extrajudicially, and, "[u]ltimately, Abington and XPO entered into an omnibus resolution to dispose of several discovery motions filed by the parties, including [Abington's] [Motion to Compel]." (Doc. 379 at 2). As part of that compromise, XPO agreed to produce to Abington the documents it previously withheld under the common interest privilege, and in exchange, Abington produced its own set of purportedly privileged documents. (*Id.* (citing Doc. 313)).

Relevant here, as part of their deal, the parties jointly requested "an order that the production of the subject documents, as described in their Motion, does not constitute a waiver of any applicable privilege or protection in this litigation or any other state or federal litigation." (Doc. 313). The Undersigned granted that request, and ordered, "[p]ursuant to Rule 502(d) of the Federal Rules of Civil Procedure, the production of the documents described in the Motion . . . shall not constitute a waiver of any claim of privilege or work product protection in this case or any other state or federal litigation." (Doc. 314 at 1–2).

Now, in briefing its Motion in *Limine*, Abington relies on a handful of email communications between XPO's counsel and Defendant Adkins' former counsel. (*See* Docs. 375, 375-1, 375-2). As noted, XPO previously withheld these documents under the common interest doctrine and later produced them as part of the parties' compromise. In seeking to permanently seal the documents, XPO asserts they "are unquestionably privileged, as they show discussions regarding counsel's mental impressions and litigation strategy." (Doc. 379 at 1). It further

3

contends that it "has a strong interest in maintaining the privileged nature of" these documents, and, because they are privileged, the "public initially had no right to view [them]." (Doc. 379 at 3). It recognizes that privilege could potentially have been waived when it produced the documents to Abington but notes that it did so only as part of its deal with XPO and "subject to this Court's order expressly holding that the privileged nature of these documents was not waived." (*Id*. (citing Doc. 314)). XPO further avers that "publicizing documents would undermine the public interest by eroding the sanctity of the privilege, as well as discourage parties from negotiating discovery disputes for fear of later losing the privilege." (Doc. 379 at 4).

The Court finds that permanently sealing the documents at issue is appropriate here. "Courts within this [C]ircuit have found [] a compelling reason [to file documents under seal] where documents implicate the privacy rights of participants or third parties." *Munson Hardisty, LLC v. Legacy Pointe Apartments, LLC*, No. 3:15-CV-547-TAV-CCS, 2017 WL 2350174, at *2 (E.D. Tenn. May 30, 2017) (quotation marks omitted) (citing *In re Se. Milk Antitrust Litig.*, 666 F. Supp. 2d 908, 915 (E.D. Tenn. 2009)). And "[d]ocuments invoking either work-product or attorney-client privilege implicate such privacy rights, and therefore, provide grounds . . . to file the documents under seal." *Munson Hardisty*, 2017 WL 2350174, at *2 (citation omitted); *see also Shane Grp.*, 825 F.3d at 308 (alteration in original) (quotation marks and citations omitted) (noting that, "[i]n civil litigation, only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence . . . is typically enough to overcome the presumption of access").

Upon *in camera* review, the Court confirms that the documents at issue fall within this narrow category and should be sealed. As XPO asserts, and Abington does not contest, the exhibits at issue consist of email communications between counsel for XPO and former counsel for

4

Defendant Jason Adkins, made pursuant to XPO's and Defendant Adkins' common interest in defending against this litigation. *Travelers Cas. & Sur. Co. v. Excess Ins. Co.*, 197 F.R.D. 601, 606 (S.D. Ohio 2000) (alteration in original) (quotation marks and citation omitted) (noting that the purpose of the common interest doctrine "is to protect the free flow of information from the client to [the] attorney when a number of clients share a common interest in litigation" and "when the parties have a common litigation opponent, or when information is exchanged between friendly litigants with similar interests"). Moreover, the request is narrowly tailored, as Abington filed a redacted version of its brief on the public docket. *See Shane Grp.*, 825 F.3d at 305 ("[E]ven where a party can show a compelling reason why certain documents or portions thereof should be sealed, the seal itself must be narrowly tailored to serve that reason.").

Additionally, the Court agrees with XPO that the interests of justice outweigh the public's interest in accessing these records. The parties, pursuant to the Undersigned's directive, worked diligently to resolve numerous discovery disputes that would have otherwise resulted in costly and time-consuming briefing. They ultimately reached a deal and produced the documents at issue. And the Court ordered that, in doing so, the parties did not waive any privilege. As such, unsealing these communications could potentially deter parties from entering similar discovery resolutions.

Finally, and perhaps most importantly, unlike the parties' previous requests to permanently seal, (*see* Docs. 346, 347), the documents at issue reveal substantive communications between XPO's counsel and Defendant Adkins' former lawyer about trial strategy. *See, e.g., Travelers Cas. and Sur. Co.*, 197 F.R.D. at 607 (recognizing as privileged, communications made pursuant to the common interest privilege where they reflected "shared interests sufficiently common or joint to create a need for full and frank communication between and among counsel and their clients," as well as a "shared [] expectation that their communications between themselves and

5

their counsel would be maintained in confidence").  The public's interest in accessing these two exhibits or Abington's unredacted brief does not justify unsealing these records to reveal counsel's communications made pursuant to their clients' common interest.  In sum, XPO has met its burden to permanently seal Abington's unredacted reply brief and supporting exhibits.

### IV.    CONCLUSION

For the foregoing reasons, XPO's Motion to Permanently Seal (Doc. 379) is **GRANTED**, and the Clerk is **DIRECTED** to permanently seal Document 378 and the attached exhibits, Documents 378-1 and 378-2.

IT IS SO ORDERED.


Date:   August 26, 2020                                    /s/ Kimberly A. Jolson
                                                            KIMBERLY A. JOLSON
                                                            UNITED STATES MAGISTRATE JUDGE