IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ABINGTON EMERSON CAPITAL, LLC,**

        Plaintiff,

-vs-

**JASON ADKINS,** *et al.***,**

        Defendants.

Case No.: 2:17-cv-143

Judge Sarah D. Morrison

Magistrate Judge Jolson

## OPINION & ORDER

Plaintiff Abington Emerson Capital's Fourth Amended Complaint asserts claims for fraud, federal and state RICO violations, civil conspiracy, and breach of contract against, *inter alia*, Defendants XPO Logistics, Inc. ("Logistics") and XPO Global Forwarding, Inc. ("Global"). (ECF No. 205.)  Summary Judgment filings of Logistics and Global argue without development that Logistics is not a proper party because it is merely the parent and holding company of Global. (ECF Nos. 338 at 8 n.2 and 365 at 2 n.3; *see also* ECF Nos. 193 at 3-4 and 213 at ¶¶ 8-9.) Accordingly, the Court's January 22, 2021 Order required the XPO Defendants to file an appropriate motion on this topic and allowed Abington to respond. (ECF No. 384 at 75.)

## THE XPO DEFENDANTS' MOTION TO DISMISS

The XPO Defendants' resultant Motion to Dismiss XPO Logistics, Inc. (ECF No. 385) asserts that dismissal of all claims against Logistics is necessary because Logistics took no action relative to the underlying facts of this case. (ECF  No. 385

1

at 3.) Specifically, Logistics argues that four members of Global's Executive Team testified that Afif Baltagi, the actions of whom form the basis for Abington's claims against the XPO Defendants, was Global's employee at all relevant times. *Id*. at 4 n.4 and at Ex. C; *see also* ECF Nos. 193 at 3-4 and 213 at ¶¶ 8-9. Logistics continues that, as the parent, it cannot be held liable for the acts of Global, one of its subsidiaries. *Id*. at 4 (citing *Strong v. U-Haul Co. of Mass.*, No. 1:03cv383, 2005 U.S. Dist. LEXIS 26503, at *18 (S.D. Ohio Nov. 3, 2005)(Watson J.)("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." )(citations and quotations omitted)). The fact that Baltagi's W2 and onboarding paperwork identified Logistics as his employer does not alter that basic proposition, Logistics argues, because "these documents were prepared as part of the human resources shared services offered by the parent company" and "'consolidation of corporate business matters such as accounting and legal work' are not terribly probative of actual operation[.]" (ECF No. 385 at 4 n. 5 and 5)(quoting *Best Foods v. Aerojet-General Corp.*, 173 F. Supp. 2d 729, 751 (W.D. Mich. 2001)(further quotation omitted)). Thus, Logistics contends that "there is no basis for XPO Logistics to be a defendant in this case." (ECF No. 385 at 4-5, n.5.)

## ABINGTON'S OPPOSITION

Noting that its claims against the XPO Defendants are premised upon vicarious liability via Baltagi's employment, Abington objects. It posits that genuine

disputes of material fact exist as to which entity employed Baltagi. (ECF No. 388 at 1.) In support, Abington states: (1) Baltagi's offer of employment came from Logistics; (2) Baltagi's confidentiality, non-solicitation, and non-compete agreement was with Logistics; (3) Baltagi signed an acknowledgement of receipt of Logistics' employee handbook; (4) the handbook stated that Baltagi's employment with Logistics was at-will; (5) Baltagi's 2013-16 W2s were issued by Logistics and contained the Federal Employee Identification Number of Logistics, not Global; and (6) Logistics' CEO, Brad Jacobs, exercised "some amount of direct operational oversite or supervisory authority control over the Houston branch" where Baltagi worked. (ECF No. 388 at 1-3.) From this, Abington argues that Logistics was clearly doing more than just "onboarding" Baltagi. (ECF No. 388 at 5.) Abington alternatively argues that Logistics and Global jointly employed Baltagi. *Id*. at 3; *see also* ECF No. 205 at ¶ 9.  Lastly, Abington argues that the XPO Defendants conceded that Baltagi is a joint employee by filing crossclaims against Baltagi for fraud, negligent misrepresentation, breach of contract, and breach of fiduciary duties. (ECF Nos. 213 ¶¶ 153-208 and 388 at n.4.)

## ANALYSIS

Initially, the Court determines that the motion is one for summary judgment, not for dismissal. Federal R. Civ. P. 12(b) requires that any motion to dismiss for failure to state a claim be filed prior to an Answer. Here, the XPO Defendants filed an Answer in June 2019—well before the instant motion was filed in February

2021. (ECF No. 213.) Accordingly, Fed. R. Civ. P. 56 and its associated standard as set forth in the Court's January 22, 2021 Opinion & Order (ECF 384) shall govern.

### A. Vicarious Liability

"It is a fundamental maxim of law that a person cannot be held liable, other than derivatively, for another's negligence. In an employment setting such as is before this court today, the most common form of derivative or vicarious liability is that imposed by the law of agency, through the doctrine of respondeat superior." *Albain v. Flower Hosp.*, 50 Ohio St. 3d 251, 254-55 (1990). Under this doctrine"[g]enerally, an employer or principal is vicariously liable for the torts of its employees or agents . . ." when the employee is engaged in performing the work of the employer. *Nat'l Union Fire Ins. Co. v. Wuerth*, 122 Ohio St. 3d 594, 599 (2009). *See also Baird v. Sickler*, 69 Ohio St. 2d 652, 654 (1982). The application of respondeat superior "depends on the existence of control by a principal (or master) over an agent (or servant), terms that [courts] have used interchangeably." *Id.* (citation omitted)." For the relationship to exist, it is unnecessary that such right of control be exercised; it is sufficient that the right merely exists." *Baird v. Sickler*, 69 Ohio St. 2d 652, 654 (1982)(citation omitted).

Genuine disputes about which entity had the right to control Baltagi are present here. Four members of Global's Executive Team testified that Baltagi was Global's employee at all relevant times. Yet, Baltagi was bound by Logistics' employment handbook and his confidentiality, non-solicitation, and non-compete agreement was with Logistics. Logistics' CEO exercised some control over the

4

location where Baltagi worked. Furthermore, Baltagi's paychecks and W-2s contained Logistics' FEIN. And while the XPO Defendants dismiss this as simple shared human resources services, "shared payroll and other administrative services are typical of parent-subsidiary relationships *so long as the subsidiary pays for those services.*" *EEOC v. Con-Way, Inc.*, No. CV 06-1337-MO, 2007 U.S. Dist. LEXIS 66727, at *13 (D. Or. Sep. 4, 2007) (emphasis added). Because the XPO Defendants point to no record evidence establishing that Global pays for the shared services, this material issue remains another unresolved component of the ability to control analysis. The Motion to Dismiss of the XPO Defendants, treated as a motion for summary judgment, is **DENIED**. (ECF No. 385.)

### B. Joint Employer Liability

Abington asserts that Logistics is jointly liable with Global for Baltagi's actions such that dismissal of Logistics would be in error. Joint employer liability "is a judicially-created doctrine that can be used to impose liability on one business enterprise for the employment actions of a related or subsidiary enterprise." *Wittenbrook v. Elecs. Recycling Servs.*, 104 N.E.3d 876, 882, 2018-Ohio-208, ¶ 27, (7th Dist.). This type of liability takes several forms; relevant here, the Court considers "whether one defendant has control over another company's employees sufficient to show that the two companies are acting as a 'joint employer' of those employees." *Swallows v. Barnes & Noble Book Stores*, 128 F.3d 990, 993 (6th Cir. 1997)(citing *Carrier Corp. v. NLRB*, 768 F.2d 778 (6th Cir. 1985)). "Entities are joint employers if they 'share or co-determine those matters governing essential terms

5

and conditions of employment.'" *E.E.O.C. v. Skanska USA Bldg., Inc.*, 550 Fed. App'x 253, 256 (6th Cir. 2013) (quoting *Carrier Corp. v. NLRB*, 768 F.2d 778, 781 (6th Cir. 1985)). "In determining if an entity is the plaintiff's joint employer, a court looks to 'an entity's ability to hire, fire or discipline employees, affect their compensation and benefits, and direct and supervise their performance.'" *Koliner v. Moorer*, No. 2:19-cv-1999, 2020 U.S. Dist. LEXIS 237851, at *14-16 (S.D. Ohio Dec. 17, 2020)(Graham, J.)(quoting *EEOC v. Skanska USA Bldg., Inc.*, 550 F. App'x 253, 256 (6th Cir. 2013)).

Again, genuine disputes are present as to whether the imposition of joint liability is proper. Baltagi's offer of employment came from Logistics; his employment conduct was governed by Logistics' employee handbook; and his paychecks came from Logistics. Abington also asserts Logistics' CEO had "some amount of direct operational oversite or supervisory authority" over Baltagi's work location. However, four top Global executives averred that Baltagi was Global's employee at all relevant times. As such, genuine disputes of material fact about XPO Defendants' ability to hire, fire or discipline Baltagi, affect his compensation and benefits, and direct and supervise his performance are present. The XPO Defendants' Motion to Dismiss, treated as one for summary judgment, is **DENIED**. (ECF No. 385.)

Finally, Abington contends that through the filing of their crossclaims against Baltagi, the XPO Defendants conceded that Baltagi was a joint employee. The Answer of the XPO Defendants admits that Baltagi is a Global employee. (ECF

6

No. 213, ¶ 9.) The statement contained within the XPO Defendants' Motion for Summary Judgment to the effect that the XPO Defendants were contesting the presence of Logistics in this action mimics that admission. While the Court finds it curious that the XPO Defendants both asserted cross-claims against Baltagi, that single fact is insufficient for the Court to aver an admission on the issue given that the Answer and Motion for Summary Judgment of the XPO Defendants both explicitly provide that Global is Baltagi's employer. To the extent that Abington moves for an order deeming the filing of the crossclaims an admission of joint employer liability on the part of the XPO Defendants, it is **DENIED**.

## CONCLUSION

Under these circumstances, dismissal of Logistics under Rule 56 is improper. The Motion to Dismiss of the XPO Defendants (ECF No. 385), treated as one for summary judgment, is **DENIED**.

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**